UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

ALAN DALE BLACK,

        Plaintiff,

v.                                    CIVIL ACTION 3:13-cv-33344

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings in a Social Security Case (ECF No. 10) and Brief in Support of Defendant's Decision (ECF No. 11).

Background

Alan Dale Black, Claimant, applied for disability insurance benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act and supplemental security income (SSI) on December 17, 2010, alleging disability beginning on July 23, 2008 (Tr. at 108-109) and the claims were denied initially on July 11, 2011, (Tr. at 62-66 and 67-71) and upon reconsideration on December 1, 2011 (Tr. at 72-74 and 75-77). Claimant filed a written request for hearing by Administrative Law Judge (ALJ) on January 27, 2012 (Tr. at 80-81). In his request for hearing, Claimant stated that he disagreed with the determination made on his claim for SSI Disability/Title II benefits because he was disabled within the meaning of the Social Security Act and unable to work or maintain gainful employment (Tr. at 80-81). Claimant appeared in person and testified at a hearing held in Huntington, West Virginia on February 20, 2013 (Tr. at 28-57). In the Decision dated March 14, 2013, the ALJ determined that based on the application for a period of disability

and disability insurance benefits, the Claimant was not disabled under sections 216(i)and 223(d)

of the Social Security Act.  The ALJ also determined that based on the application for supplemental

security income, the Claimant was not disable under section 1616(a)(3)(A) of the Social Security

Act (Tr. 11-27).  On May 13, 2013, Claimant filed a Request for Review of Hearing Decision of

the ALJ (Tr. at 9).[1]  On October 21, 2013, the Appeals Council denied Claimant's request for

review because they found no reason under its rules to review the ALJ's decision[2] (Tr. at 1-4)

On December 26, 2013, Claimant bought the present action requesting this Court to reverse

or remand the decision of the Commissioner.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a

disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined

as the "inability to engage in any substantial gainful activity by reason of any medically

determinable impairment which can be expected to last for a continuous period of not less than 12

months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

disability claims.  20 C.F.R. § 404.1520 (2013).  If an individual is found "not disabled" at any

step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is

whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.*

§ 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment

---

[1]  It appears that the Request for Review of Hearing Decision was filed because Claimant had recently retained new counsel, Rose Anne Cyrus.

[2]  The Appeals Council received additional evidence which was made part of the record.  That evidence consisted of two exhibits, namely, Exhibit 16E – Representative Brief of Attorney Rose A. Cyrus dated July 21, 2013 and Exhibit 15F – Medical records of St. Mary's Medical Center dated from August 17, 1981 to January 14, 2012.

meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative

Regulations No. 4.   *Id.* § 404.1520(d).   If it does, the claimant is found disabled and awarded

benefits.   *Id.*   If it does not, the fourth inquiry is whether the claimant's impairments prevent the

performance of past relevant work.   *Id.* § 404.1520(e).   By satisfying inquiry four, the claimant

establishes a *prima facie* case of disability.   *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).   The

burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir.

1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms

of substantial gainful activity, considering claimant's remaining physical and mental capacities and

claimant's age, education and prior work experience.   20 C.F.R. § 404.1520(f) (2013).   The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education,

work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d

572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because

he has not engaged in substantial gainful activity since the alleged onset date of July 12, 2008 (Tr.

at 16).   The ALJ found that Claimant meets the insured status requirements of the Social Security

Act through December 31, 2012. (*Id.*)   Under the second inquiry, the ALJ found that Claimant

suffers from the severe impairments of major depressive disorder, anxiety disorder, adult deficit

hyperactivity disorder (ADHD) and tarsal coalitions. (*Id.*)   At the third inquiry, the ALJ concluded

that Claimant did not have an impairment or combination of impairments that met or medically

equaled the level of severity of any listing in Appendix 1 (Tr. at 17).   The ALJ then found that

Claimant has a residual functional capacity to perform medium work[3] (Tr. at 18).   However, due

---

[3]  The ALJ ordered that Claimant can stand or walk three hours out of an eight hour work day and is limited to simple
to lower end of detailed instructions with only occasional interaction with the public and low stress work, defined as

to limitations affecting Claimant's ability to perform the requirements of representative occupations, the Vocational Expert (VE) testified at the hearing that representative occupations at the sedentary level of work could be performed (Tr. at 22).  As a result, the ALJ concluded that Claimant could perform jobs such as assembler, inspector and sorter.  (*Id.*) On this basis, benefits were denied (Tr. at 22-23).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on April 30, 1964.  He graduated high school in 1982 (Tr. at 126).

---

only occasional changes in the work setting and only occasional decision making required (Tr. at 18).

Claimant possesses a driver's license (Tr. at 33).  Claimant has work experience in trucking and

painting (Tr. at 127).

## The Medical Record

The court has reviewed all evidence of record, and will address those portions which are

relevant to the issues raised by Claimant.  As Claimant's complaint filed with this Court focuses

on whether the ALJ presented all of Claimant's physical limitations in the hypothetical questions

before the VE, the undersigned will solely address those alleged physical impairments.

Based on the pleadings of the parties, the medical record is comprised as follows:

> The claimant had a congenital condition which was shown
> on his DD214 as synostosis of the talo-navicular joint bilaterally.  It
> was recommended that he be separated from the naval service.  (TR
> 264)  He had also injured his low back when in high school (TR 416)
> He also on September 4, 2002 treated for an acute gastrointestinal
> bleed.  (TR 385)  The cause was duodenal ulcers/stomach erosions.
> (TR 386)   He was also diagnosed with anxiety disorder and
> depression.  (TR 390)  On July 11, 2005 he underwent surgery for
> an umbilical hernia.  (TR 367)  It was later discovered that his
> wound had abcessed [sic] and he was given multiple courses of
> antibiotics.  (TR 301)
> Dr. Klinestiver's[4] treatment notes showed that [Claimant]
> had been seen once for pain in his right hip on March 7, 2007.  Then
> on September 22, 2009 he was seen for bilateral foot pain.  (TR 195)
> A Brief Pain Inventory indicated that his pain in the past 24 hours
> was 8 out of 10 with 10 being the highest level.  On average he
> reported 7 out of 10.  His pain relief from medication was 60%.  Pain
> had interfered with his general activity 8 out of 10, his mood 6 out
> of 10. walking ability, normal work, sleep and his ability to
> concentrate 8 out of 10, relations with other people 5 out of 10.  His
> enjoyment of life was 7 out of ten and his appetite was affected by
> pain 3 out of 10. (TR 204)
> Treatment notes from Scott Orthopedic showed that he was
> referred there by Dr. Klinestiver.  Dr. Scott noted that the plaintiff
> had fractured an ankle in 1998 although he could not remember
> which one.  He was reported to have healthy planovalgus with
> spastic peroneals.  X-rays showed bilateral s-ostosis talonavicular
> jts bilat with some breaking I navic cunieform jts.  The assessment
> was tarsal coalitions, peroneal spastic flat feet secondary to

---

4  Donald G. Klinestiver, M.D., is Claimant's primary care provider.

tarsalcoalitition talo-navicular jts. bilat.  Recommended treatment was weight reduction, arch supports, hi-top shoes and NSAID medication.  No operation was recommended.  (TR 191) Dr Scott noted that he had treating himself with arch supports.  (TR 201)
(ECF No. 10).

On September 22, 2009, Plaintiff reported to Donald G. Klinestiver, M.D., his primary care provider, that he was having bilateral foot pain, but doing well otherwise (Tr. 195).  At his next appointment with Dr. Klinevester, more than a year later, Dr. Klinestiver referred him to an orthopedist for his foot pain (Tr. 191, 194).

On January 5, 2011, Plaintiff saw Thomas F. Scott, M.D., of the Scott Orthopedic Center (Tr. 191).  On examination, Plaintiff's feet were healthy, muscular and flat (Tr. 191).  Dr. Scott assessed tarsal coalitions (abnormal connection between the two bones in the back of the foot) and treated Plaintiff with arch supports, high-top shoes, and non-steroidal anti-inflammatory drugs (NSAIDS) (Tr. 191).  He also recommended weight reduction (Tr. 191).  Dr. Scott felt that surgery would be counter-productive (Tr. 191, 194).

At monthly appointments with Dr. Klinestiver from January – November 2011, Dr. Klinestiver prescribed Norco (a combination of acetaminophen and hydrocodone) for his feet (Tr. 193-94, 203, 245, 248).

On June 30, 2011, state agency physician Lawrence Schaffzin, M.D., completed a physical residual functional capacity assessment (Tr. 223-30).  Dr. Schaffzin opined that despite his tarsal coalitions, Plaintiff remained capable of lifting and carrying 25 pounds frequently, and 50 pounds occasionally, standing/walking two-to-three hours in an eight-hour workday, and sitting about six hours in an eight-hour workday (Tr. 224).  On November 30, 2011, a second state agency physician, Fulvio Franyutti, M.D., affirmed Dr. Schaffzin's opinion as written (Tr. 253).
(ECF No. 11).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to include in the hypothetical presented to the VE at the hearing "all of the limitations reasonably supported by the medical evidence" (ECF No. 10). In response, Defendant asserts that the ALJ's determination is supported by substantial evidence (ECF No. 11).

Vocational Expert

At the hearing on February 20, 2013, the VE testified that Claimant's work experience as an over the road truck driver is classified as medium and semi-skilled (Tr. at 50).  The VE testified that his work experience as a painter helper is classified as very heavy and unskilled.  (*Id.*)  The ALJ asked the VE "If you took an individual limited to medium level work who can stand and walk three hours of an eight hour day. Given those limitations, would the individual be able to perform the past work of the claimant?"  The VE answered that the position of truck driver could be performed with those limitations.

The ALJ then asked the VE if an individual with Claimant's age, education and work history could perform other jobs.  The VE testified that "At the sedentary level, your honor, the standing limitations to less than four hours, your honor, would effectively eliminate medium to light except that [at] the claimant's prior work he did primarily in a seated position." (*Id.*)  The VE testified that at the sedentary level, the individual would be able to perform positions in the region and nation of surveillance system monitor, assembler and inspector (Tr. at 41).

The ALJ asked the VE whether the individual could perform Claimant's past work if additional limitations of simple to lower end[5] of detailed instructions with only occasional interaction with the public and low stress, were added.  The VE testified that no, the individual could not perform Claimant's past work.  Out of the three sedentary positions provided by the VE, the ALJ asked which would the hypothetical individual be able to perform.  The VE testified that the individual would not be able to perform the position of operator but would remain able to perform the positions of surveillance system monitor and inspector.

The ALJ asked the VE if the hypothetical individual was limited to simple to lower end

---

[5]  The ALJ defined "low end" as low stress with only occasional changes in the work setting and only occasional decision making (Tr. at 51).

work requiring detailed instructions with only occasional interaction with the public and low stress[6], would such an individual be able to perform Claimant's past work.  The VE testified that such an individual would not be able to perform Claimant's past work.  Out of the three sedentary positions provided by the VE, the ALJ asked which would the amended hypothetical individual be able to perform.  The VE testified that the individual would not be able to perform the position of operator but would remain able to perform the positions of surveillance system monitor and inspector.

Claimant's counsel presented hypotheticals to the VE which included more limitations. Claimant's counsel asked the VE to consider that a surveillance system monitor would make false reports of problems on the surveillance system if he/she experienced visual hallucinations, such as seeing "shadow people that weren't really there" or experiencing auditory hallucinations, such as hearing things that weren't there (Tr. at 52).  The ALJ asked if that would affect Claimant's ability to work.  The VE testified that the limitations would cause the individual great difficulty in being able to perform the position of a surveillance system monitor.  Claimant's counsel then asked if inspector or assembler positions could be performed by an individual with the same limitations. The VE testified that it would depend on how much of his attention would be affected by the limitations (Tr. at 53).  The VE stated that the limitations would make the individual unable to do the jobs (Tr. at 54).

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989).  "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the

---

[6] The ALJ defined "low stress" as only occasional changes in the work setting and only occasional decision making required (Tr. at 51).

particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." *Id.* at 51.  Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.  *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.  *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

The Fourth Circuit has held, "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983).  The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

Claimant reported engaging in activities including taking care of a pet, preparing simple meals, doing some yard work, shopping in stores, handling his own finances, going fishing and watching television (Tr. at 19, 33, 42-43, 144-51, 167-74, 220).  The ALJ found that "His subjective presentation appears rather exaggerated in light of the evidence of record and overall, he has had only limited conservative treatment" (Tr. at 19).  Accordingly, the ALJ reasonably determined that Claimant was less than fully credible[7] because his activities suggested a greater

---

[7]   Social Security Ruling 96-7p clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements.  The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record.  This includes, but is not limited to:

- The medical signs and laboratory findings;
- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

functional capacity than he was willing to admit .*See* 20 C.F.R. §§ 404.1545(e), 416.945(e) (when formulating the residual functional capacity assessment, the ALJ will consider a claimant's subjective complaints).

Discussion

In the present matter, the ALJ arrived at the following residual functional capacity assessment (RFC):

> Perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can stand or walk three hours out of an eight hour work day; and is limited to simple to lower end of detailed instructions with only occasional interaction with the public and low stress work, defined as only occasional changes in the work setting and only occasional decision making required (Tr. at 18).

Claimant's physical abilities were consistent with or at a lower level than the full range of medium work. *See* 20 C.F.R. §§ 404.1567, 416.967. Claimant's residual functional capacity did not fall neatly into any one exertional category, because some of his abilities were less than full range of medium work, thus making strict application of the Commissioner's Medical-Vocational Guidelines (Grids) inappropriate (Tr. at 22). Consistent with 20 C.F.R. §§ 404.1566(e), 416.966(e), the ALJ appropriately consulted with a VE to assess the impact of Claimant's functional limitations on the medium occupational base and determine whether there were jobs in significant numbers in the national economy that he could perform (Tr. at 22, 50-52). In response to a hypothetical question that accurately portrayed Claimant's credible limitations, the vocational expert testified that an individual, similar to Claimant, could have performed the sedentary jobs of assembler, inspector, and sorter (Tr. at 20, 50-52). The ALJ rejected additional limitations

---

- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

presented by Claimant's counsel to the VE because the hypothetical "is not supported by the objective medical evidence and appears to be based solely on the claimant's subjective complaints.

Because the hypothetical question presented by the ALJ accurately reflected Claimant's functional limitations, the ALJ reasonably relied upon the VE's testimony to find Claimant not disabled (Tr. at 20, 50-52). Accordingly, this Court recommends that the presiding District Judge find that ALJ's decision is supported by substantial evidence.

Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner, **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings in a Social Security Case (ECF No. 10), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d

91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge

Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit

a copy of the same to counsel of record.

Date:   September 4, 2015

_____
Dwane L. Tinsley
United States Magistrate Judge